Dated: December 11, 2020

ORDERED.

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

SPIDERMAN SCOTT MULHOLLAND and
TINA MARIE FOLEY MULHOLLAND

    Debtors.
_____/

Chapter 11

Case No. 3:18-bk-4096-JAF

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court for confirmation of Debtors' Fourth Modified Amended Chapter 11 Plan (the "Proposed Plan") (Doc. 323) and the objection to confirmation filed by Creditor REBEKKA TRAHAN ("Trahan"). (Doc. 346). A trial was held on July 22 and 23, 2020. (Docs. 395 & 399). The parties filed post-trial briefs. (Docs. 417 & 418). Upon the evidence presented and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rules 9014(c) and 7052.

### Findings of Fact

In November 2018, Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Court authorized Debtors to maintain possession of estate property as debtors-in-

possession, under § 1108 of the Bankruptcy Code and Local Rule 2081-1. (Doc. 5). Trahan filed a secured proof of claim stemming from a state-court judgment she obtained against both Debtors in 2018. The judgment stated Trahan shall "recover from defendants, Spiderman Scott Mulholland and Tina Mulholland [ ], the sum of $4,643,000.00, that shall bear interest at the rate of 5.97 % a year, for which let execution issue." (Claim 14-2 Part 2 at 1) (the "Judgment Debt"). The judgment was affirmed by the state appellate court, in an unwritten opinion. Trahan's allowed claim is secured by a statutory judgment lien on Debtors' "interest in all personal property in [Florida] subject to execution [ ], other than fixtures, money, negotiable instruments, and mortgages." § 55.202(2), Fla. Stat. (2018). The Judgment Debt is nondischargeable, as to Spiderman Mulholland, pursuant to § 523(a)(6) of the Bankruptcy Code. (Docs. 21 & 23, adv. pro. 3:19-ap-0063). On July 13, 2020, Trahan filed an amended proof claim, which values the claim at roughly $5.1 million with post-judgment interest. (Claim 14-2).

Debtors' bankruptcy estate includes one hundred percent of the stock in a Florida corporation named US Building Consultants, Inc. ("US Building"). US Building remediates commercial construction defects related to water intrusion. US Building is operated by Spiderman Mulholland. Spiderman Mulholland is the face of the business, as well as the owner and an employee of US Building. Tina Marie Mulholland is his wife and is also an employee.

In July 2019, the Court entered a consent order in which the parties agreed US Building "is valued at a minimum of" $4.8 million (the "Valuation Order"). (Doc. 167). The Valuation Order resolved Debtors' amended motion to determine the secured status of Trahan's claim, filed under § 506(a) and Bankruptcy Rule 3012. At the trial on confirmation, Trahan's attorney stated the Valuation Order was agreed to due to concern that Debtors would attempt to strip down Trahan's

judgment lien. Based on the Valuation Order, the Court finds US Building is valued at no less than $4.8 million for purposes of this Order.

Turning to the Proposed Plan, Trahan is the sole Class 5 creditor and is an impaired creditor under § 1124 of the Bankruptcy Code. The Proposed Plan treats Trahan as follows:

> As of the Effective Date, the Debtor Spiderman Scott Mulholland will turn over his 100% equity holding in US Building Consultants, Inc., to Trahan as the indubitable equivalent of her claim in the amount of $4,800,000.00, pursuant to Trahan's agreement as to value (see Doc. 167). After the turnover of the USBC stock, the remaining balance of Trahan's claim (accounting for statutory interest accrued up to July 22, 2020, and less payments already made), will be $375,639.95. The Debtors will pay this amount through minimum monthly payments of $2,500, though the Debtors may pay the outstanding balance at any time without penalty. Upon settlement of the Debtors' legal malpractice claim, the Debtors will pay the then remaining balance of Trahan's claim with the settlement proceeds. If after such payment any amount of Trahan's claim remains unpaid, the Debtors will continue to make $2,500 monthly payments until the claim is paid in full. On the date that is five years after the Effective Date, the Debtors will satisfy any remaining balance of Trahan's claim through [ ] a lump sum payment. While the claim is outstanding, any remaining unpaid principal will continue to accrue interest at the statutory rate.

(Doc. 323 at 5).

US Building remains a viable going concern with Spiderman Mulholland at the helm. Spiderman Mulholland retains the personal knowledge and capacity to operate the business of US Building. However, the Proposed Plan does not provide for either of Debtors' continued employment with US Building post-turnover of the stock. There are no noncompete agreements between US Building and any employee, including Debtors. Nothing prevents Debtors or any other key personnel from leaving US Building after turnover and taking US Building clients.

Trahan is in her mid-30s and has only a high school education. Her primary work experience is as an administrative office assistant. Spiderman Mulholland testified that Trahan could hire an outside manager to operate US Building in her stead and that, in so doing, Trahan

would never have to interact with anyone involved in the business except the manager she hired to oversee it.  No person potentially capable of fulfilling this role has been advanced by any party.  This scenario would require Trahan to find someone trustworthy, knowledgeable, and capable of filling this position.  Additionally, Trahan would still have to manage this manager.  Although Trahan's testimony showed she is intelligent and wise beyond her years, no evidence was presented demonstrating she has the specific knowledge or experience necessary to operate a going concern of this size and complexity.  The Court finds, as a question of fact, that ownership of US Building would effectively constitute a liability for Trahan rather than an asset.  The operation and management of US Building (even by way of third-party proxy) requires knowledge, experience, business acumen, and training that Trahan simply does not have.  It further requires consistent effort on Trahan's part and subjects her potential recoupment to the vagaries of market conditions that happen to prevail post-turnover.  Further, while there is no dispute as to US Building's valuation, the Court finds Trahan could not sell US Building on the open market for $4.8 million.  This is due to, among other things, the lack of a noncompete agreement preventing Spiderman Mulholland from taking US Building's goodwill and book of clients with him to another company.  No potential purchasers have been shown to the Court.

Most importantly, however, Trahan wants nothing to do with US Building and has no desire to undertake ownership of the company, under any terms presented at trial.  Trahan specifically and expressly wants no contact with Debtors.  Given the circumstances, tying Trahan to US Building, and therefore to Debtors, would create an unreasonable psychological burden on Trahan.

## Conclusions of Law

"Generally, for a Bankruptcy Court to confirm a plan of Chapter 11 reorganization, all of the requirements of 11 U.S.C. § 1129(a) must be met."  In re Sugarleaf Timber, LLC, 529 B.R.

317, 326 (M.D. Fla. 2015). Section 1129(a)(8) requires that each class of creditors accept the plan or not be impaired by the plan. 11 U.S.C. § 1129(a)(8) (2018). Here, Trahan's claim is impaired because the Judgment Debt calls for direct cash payment whereas the Proposed Plan calls for in-kind payment in the form of turnover of property (i.e., US Building) to Trahan. The Proposed Plan does not leave Trahan's rights "unaltered." 11 U.S.C. § 1124 (2018); 6 Norton Bankr. L. & Prac. 3d § 109:7 (Oct. 2020). Because Trahan's claim is impaired and she has objected to the Proposed Plan, § 1129(a)(8) is not met.

Nevertheless, § 1129(b)(1) provides that, if all the requirements of § 1129(a) other than (a)(8) are met, the Court shall confirm the plan "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1) (2018); Sugarleaf Timber, 529 B.R. at 326. "A Chapter 11 plan confirmed over the objection of a 'class of [impaired] secured claims' must meet one of three requirements in order to be deemed 'fair and equitable' with respect to the nonconsenting creditor's claim." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 643 (2012). Those three requirements are enumerated in § 1129(b)(2)(A)(i) through (iii).

"Under clause (i), the secured creditor retains its lien on the property and receives deferred cash payments." RadLAX Gateway, 566 U.S. at 643. "Under clause (ii), the property is sold free and clear of the lien, 'subject to section 363(k),' and the creditor receives a lien on the proceeds of the sale." Id. at 644. "Finally, under clause (iii), the plan provides the secured creditor with the 'indubitable equivalent' of its claim." Id. Here, only clause (iii) is at issue. Thus, the present question is whether the turnover of US Building to Trahan, combined with deferred cash payments, constitutes realization of the "indubitable equivalent" of Trahan's claim.

5

Sugarleaf Timber is an instructive opinion. Debtor Sugarleaf was a land developer that purchased several thousand acres of land. Sugarleaf Timber, 529 B.R. at 325-26. The land purchase was financed by creditor Farm Credit. Sugarleaf defaulted and filed a Chapter 11 case. Farm Credit's claim was secured by three mortgages as well as liens on many of Sugarleaf's other assets. The "cornerstone" of the proposed plan was the "transfer of the [land] to Farm Credit in full satisfaction of Farm Credit's claim." Id. at 321. "While Sugarleaf contended the [p]roperty provided Farm Credit with the 'indubitable equivalence' of its claim, Farm Credit voted to reject the plan and objected to its confirmation." Id. A confirmation hearing was held, and the bankruptcy court valued the property at $30.3 million. Farm Credit's allowed secured claim was $25.7 million, leaving an 18% equity cushion. Farm Credit's costs to sell the real property would amount to roughly 8% of the valuation. Id. at 333. Thus, based on the equity cushion and costs to liquidate the property, the bankruptcy court concluded the turnover provided Farm Credit with the indubitable equivalent of its claim and confirmed the proposed Chapter 11 plan. Farm Credit appealed the confirmation order to the district court.

The Sugarleaf district court stated this determination "is a fact intensive inquiry" that "necessarily requires the Bankruptcy Court to resolve conflicting evidence and make credibility determinations in order to value the asset." Id. at 327. The district court discussed how courts have historically recognized that turnover of collateral in full satisfaction of a debt (referred to as "dirt for debt" plans where the collateral is real property) can provide the creditor with the indubitable equivalent of its claim—given the appropriate circumstances. Id. at 328. The district court stated, "to qualify as the 'indubitable equivalent' of its claim, 'the treatment must be completely compensatory'" and there must be "no reasonable doubt [ ] the creditor will be paid in full." Id. The district court affirmed and held that the equity cushion, and ready ability to sell the

property, ensured Farm Credit would receive the indubitable equivalent of its claim. Id. at 335 ("Applying the foregoing authorities to the facts of this case, the equity cushion in the Property is more than sufficient to ensure that Farm Credit receives the indubitable equivalent of its claim.").

Here, there is no dispute as to the proper valuation for US Building. Yet, the Valuation Order does not end the analysis. In contrast to Sugarleaf Timber, there is no potential buyer and no clear path for Trahan to sell US Building to any third party. Even if a potential buyer manifested after turnover, it is extremely doubtful that Trahan would receive $4.8 million due to the lack of a noncompete agreement with Spiderman Mulholland or any other employee. Spiderman Mulholland is the face of the business and effectively controls US Building's book of clients. His subject-matter knowledge, as well as the good will and book of clients he controls, are the core assets of the business. Without these, US Building's revenue would likely drop precipitously.

Notwithstanding US Building's valuation, the Court cannot conclude Trahan's treatment is "completely compensatory" or that there is "no reasonable doubt" Trahan will be paid in full under the Proposed Plan. To the contrary, turnover of US Building is anything but compensatory, and substantial doubt exists as to whether ownership of US Building would allow Trahan to recoup the full amount of money owed to her.

That is, turnover of US Building would require diligent effort from Trahan in order for her to *potentially* recoup the money owed to her. The mere opportunity to recoup the money is dependent on Trahan's oversight of the company (whether direct or indirect), prevailing market conditions and demand for US Building's services, third-party competition, and the day-to-day performance of the employees of US Building—none of whom have an obligation to remain with the company. Trahan has no knowledge of the industry and no experience operating a business of

any sort   Further, while the evidence is quite clear that US Building's revenue is strong, there is no evidence that its revenue will remain the same over the next five or ten years.

As stated above, Spiderman Mulholland testified that Trahan could hire a manager to run the business, thereby preventing her from having to set foot on the premises or interact with Debtors at all.  However, to contend the owner of the business would never need to interact with the key operational personnel and facilities is unreasonable.  It strains credulity to believe that Trahan could run a business of this nature and protect her own self-interests, as owner, remotely or through a proxy.

Making Trahan the owner of US Building would create a managerial minefield for the company and a psychological minefield for Trahan.  It is much more likely that making Trahan the sole owner of US Building would, for reasons completely outside of her control, torpedo the estate's primary asset. The Court cannot, in good conscience, countenance such a proposal, and bankruptcy law does not support it.  The Court concludes the Proposed Plan does not provide Trahan with the "indubitable equivalent" of her claim, and no reasonable court could conclude otherwise, given the totality of the circumstances.  The Court cannot confirm the Proposed Plan due to its failure to comply with § 1129(a)(8).

### Conclusion

Debtors' Proposed Plan does not satisfy § 1129(a)(8) because Class 5, the class of which Rebekka Trahan is the sole creditor, is an impaired class and does not accept the plan.  Additionally, the Proposed Plan does not propose to pay Trahan the indubitable equivalent of her claim.  The Court will therefore deny confirmation of Debtors' Proposed Plan.  The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Attorney Seldon Childers is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.