ORDERED.

Dated: January 14, 2022

*Jerry A. Funk*
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

SPIDERMAN SCOTT MULHOLLAND and    Case No. 3:18-bk-4096-JAF
TINA MARIE FOLEY MULHOLLAND,       Chapter 11

          Debtors.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Case came before the Court for trial on September 29, 2021, on the Renewed Motion to Dismiss (Doc. 564), filed by the creditor, Rebekka Trahan ("Trahan"). At the trial, the Court also considered the competing plans of reorganization filed by the Debtors and Trahan (Docs. 519, 525), the Final and Supplemental Applications for Compensation (the "Applications for Compensation") filed by Trahan's counsel (Docs. 529, 552), and the Debtors' Objection to the Applications (Doc. 536). Upon consideration of the evidence and arguments presented by the parties, as well as the protracted litigation in this Case, which has not brought the Debtors closer to confirming a plan of reorganization, the Court will dismiss the case.

## Background Facts

In November 2018, the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The filing was precipitated by a state-court judgment debt obtained by Trahan against both the Debtors in 2018. The judgment, which is the basis for Trahan's secured claim, states that Trahan shall "recover from defendants, Spiderman Scott Mulholland and Tina Mulholland [ ], the sum of $4,643,000.00, that shall bear interest at the rate of 5.97 % a year, for which let execution issue." (Claim 14-2 Part 2 at 1) (the "Judgment Debt"). The judgment was affirmed by the state appellate court, in an unwritten opinion. Trahan's claim is secured by a statutory judgment lien on Debtors' "interest in all personal property in [Florida] subject to execution [ ], other than fixtures, money, negotiable instruments, and mortgages." Fla. Stat. § 55.202(2) (2018). The Judgment Debt is nondischargeable, as to Debtor Spiderman Mulholland, pursuant to § 523(a)(6) of the Bankruptcy Code. (Docs. 21 & 23, adv. pro. 3:19-ap-0063). The dischargeability as to Debtor Tina Marie Mulholland remains a pending question in adversary proceeding 3:19-ap-0063. Trahan's claim is an allowed secured claim. (Doc. 133). On July 13, 2020, Trahan filed an amended proof claim, which values the claim at approximately $5.1 million with post-judgment interest. (Claim 14-2).

The Debtors' bankruptcy estate includes one hundred percent of the stock in a Florida corporation named US Building Consultants, Inc. ("US Building"). US Building remediates commercial construction defects related to water intrusion. US Building is operated by Debtor Spiderman Mulholland. Spiderman Mulholland is the face of the business, as well as the owner and an employee of US Building. Debtor Tina Marie Mulholland is his wife and is also an employee.

In July 2019, the Court entered a consent order in which the parties agreed US Building "is valued at a minimum of" $4.8 million (the "Valuation Order"). (Doc. 167). The Valuation Order resolved the Debtors' amended motion to determine the secured status of Trahan's claim, filed under § 506(a) and Bankruptcy Rule 3012. Based on the Valuation Order, the Court finds US Building is valued at no less than $4.8 million for purposes of this Order.

During the course of this Case, the Court has presided over contentious litigation. On December 11, 2020, the Court entered Findings of Fact and Conclusions of Law in which the Court denied confirmation of the Debtors' Fourth Modified Amended Chapter 11 Plan (the "Previous Plan"). (Doc. 436). Ultimately, the Court concluded the Previous Plan did not provide Trahan with the "indubitable equivalent" of her claim. Among other concerns, the Court found:

> Even if a potential buyer manifested after turnover [of the US Building stock], it is extremely doubtful that Trahan would receive $4.8 million due to the lack of a noncompete agreement with Spiderman Mulholland or any other employee. Spiderman Mulholland is the face of the business and effectively controls US Building's book of clients. His subject-matter knowledge, as well as the good will and book of clients he controls, are the core assets of the business. Without these, US Building's revenue would likely drop precipitously. (Doc. 436, p. 7).

The Court also entered Findings of Fact and Conclusions of Law that denied Trahan's Motion to Dismiss (the "Initial Motion to Dismiss") and gave the Debtors additional time to "financially reestablish themselves." (Doc. 434, p. 9).

Almost a year after conducting a trial on the Debtors' Previous Plan and Trahan's Initial Motion to Dismiss, the Court held a trial on the Debtors' Fifth Amended Plan of Reorganization (the "Fifth Amended Plan") (Doc. 519), Trahan's Second Amended Chapter 11 Liquidating Plan of Reorganization (the "Competing Plan") (Doc. 525), Trahan's Renewed Motion to Dismiss (Doc. 564), and the Applications for Compensation filed by Trahan's counsel (Docs. 529, 552).

The Debtors filed this Chapter 11 petition over three years ago to halt Trahan's debt collection efforts, and very little progress has been achieved during the pendency of the Case. By their Fifth Amened Plan, the Debtors seek approval of a plan that essentially gives them indefinite time to pursue a state court malpractice claim (the "Malpractice Action") against their former state court trial counsel. The Debtors are relying on the Malpractice Action being resolved in their favor to pay off their administrative claims, followed by their unsecured creditors, with any remainder to be distributed to secured creditors. (Doc. 519, p. 8). Under the proposed terms, the Debtors will not proceed with the marketing and sale of their stock in US Building until after the resolution of the Malpractice Action. Specifically, the Fifth Amended Plan treats Trahan, who is an impaired creditor under § 1124 of the Bankruptcy Code, as follows:

> Following the resolution of the Debtors' malpractice claim and distribution of proceeds according to the terms of this Plan, the Debtors will list for sale their stock in USBC in a commercially reasonable manner for a period of ninety (90) days with an independent business broker. Any party may purchase the property, except for any entity having any connection whatsoever to Trahan (or her agents, successors, and/or assigns), as Trahan has disclaimed any interest in ownership or control of USBC, unless the price offered by such entity is equal [to] or greater [than] Trahan's agreed value of the stock per Doc. 167. After the expiration of the ninety (90) day marketing period, the USBC Stock will be auctioned to the highest bidder through an auction process as recommended by the Debtors' business broker. (Doc. 519 p. 8).

Therefore, the timing of when Trahan's secured claim will be paid is directly tied to the resolution of the Malpractice Action, which has not yet gone to trial. Notably, Clay Coward, the attorney who represents the defendants in the Malpractice Action,[1] testified in a deposition that an attempt to mediate the matter has already failed, the defendants intend to vigorously defend the case, and if a "significant verdict" is reached against the defendants, he believes the defendants would pursue

---

[1] Mr. Coward was retained by the insurance company for the defendants. (Trahan's Ex. 8, p. 14).

an appeal so long as they thought a reasonable basis existed to do so.[2] (Trahan's Ex. 8, pgs. 28-29, 37-39).

The Fifth Amended Plan also restricts the ability of Trahan to credit bid under 11 U.S.C. Section 363(k):

> The ultimate purchaser of the USBC stock shall take the stock free and clear of all liens. Consistent with her prior articulated objections, Trahan shall not exercise any act of possession or dominion over the USBC stock, nor shall Trahan be permitted to credit bid in any amount less than the full amount of her remaining allowed claim. All proceeds from the sale of USBC shall be paid directly to Trahan, and Trahan's secured claim will thus be deemed fully satisfied and discharged pursuant to her agreed valuation of USBC. (Doc. 519, pgs. 8-9).

Although Trahan has proposed the Competing Plan, she ultimately seeks to have the case dismissed for cause under 11 U.S.C. § 1112(b)(4).

## Analysis

On the motion of any party in interest, unless the Court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," the court must dismiss a Chapter 11 case or convert the case to a Chapter 7 case if the movant establishes "cause." 11 U.S.C. § 1112(b)(1)-(2) (2018). Further, a bankruptcy court has "wide discretion" to determine whether cause exists. In re BH S & B Holdings, LLC, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

Section 1112(b)(4) provides that "cause" includes sixteen (16) specific bases. 11 U.S.C. § 1112(b)(4)(A)-(P) (2018). These grounds, however, are "illustrative, not exhaustive." In re AdBrite Corp., 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (citing C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997)). "Accordingly, courts have

---

[2] Based on an agreement between the parties, the Court entered an order which provided that the testimony by deposition of Mr. Coward, Esq., would be permitted at the confirmation hearing in lieu of live testimony. (Doc. 593).

also determined that conversion or dismissal of a Chapter 11 case is warranted for other reasons, including the debtor's inability to effectuate a plan and a debtor's unwarranted delay of the case through unnecessary motion practice." In re Babayoff, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); see also In re DCNC North Carolina I, LLC, 407 B.R. 651, 665 (Bankr. E.D. Pa. 2009) (concluding that "the inability to effectuate a plan, by itself, provides cause for dismissal or conversion of a chapter 11 case").

Trahan's Renewed Motion to Dismiss alleges the following bases for "cause": i) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (ii) gross mismanagement of the estate; (iii) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (iv) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under § 1112(b)(4); and (v) the failure to timely pay taxes owed after the date of the order for relief. Trahan asserts that she is not asking the Court to revisit its prior decision which denied her Initial Motion to Dismiss but is raising new facts and issues based on the case's current posture as well as actions taken by the Debtors following the Court's December 2020 decision that denied confirmation of the Debtors' Previous Plan. The Debtors object to the Renewed Motion to Dismiss and counter that Trahan is merely seeking to rehash issues that were previously litigated and rejected by the Court. The Court agrees, that to a certain extent, the Renewed Motion to Dismiss makes similar arguments to those that have already been rejected by the Court, and the Court will not reexamine those issues. Instead, the Court will focus on the Debtors' continued inability to propose a confirmable plan.

In the Findings of Fact and Conclusions of Law on the Initial Motion to Dismiss, the Court stated that although it had denied confirmation of Debtors' Chapter 11 plan that the issue was not

whether the Debtors could confirm a plan. (Doc. 434, p. 5). There the Court stated, "[r]ather, the issue is whether Debtors' financial prospects justify continuing the bankruptcy case." Id. At that juncture in the case, the Court concluded that cause did not exist under § 1112(b)(4)(A) because there was no unlikelihood of rehabilitation. However, it is now over a year later, and despite the Debtors being on their Fifth Amended Plan, there are serious questions as to feasibility, and the proposed treatment of Trahan's secured claim still fails to meet the fair and equitable requirement under 11 U.S.C. § 1129(b)(2)(A).

Courts have recognized that cause under 11 U.S.C. § 1112(b) may be established where the record reflects that the debtor is unable to effectuate a plan. "A debtor's ability to effectuate a plan may well turn on practical considerations, including whether confirmation can be achieved. A debtor is unable to effectuate a plan where it 'lacks the ability to formulate a plan or to carry one out.'" In re Babayoff, 445 B.R. at 76–77 (citing Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989)); see also In re Local Union 722 Int'l Bhd. of Teamsters, 414 B.R. 443, 453 (Bankr. N.D. Ill. 2009) (finding cause under Section 1112(b) where a single creditor held seventy-eight percent of the unsecured debt and objected to the plan because his claim was impaired, and confirmation of a plan was therefore impossible); In re B & B West 164th Street Corp., 147 B.R. 832, 842 (Bankr. E.D.N.Y. 1992) (finding cause under Section 1112(b) where plan confirmation was impossible over objection of creditor who controlled over one-third of a class).

A plan of reorganization is the "framework for the [Debtors'] reorganization and exit from bankruptcy,"[3] and the Debtors "cannot wallow"[4] indefinitely in this Chapter 11 Case. In addition to the indefinite amount of time pursuit of the Malpractice Action will take, along with whether

---

[3] In re Babayoff, 445 B.R. at 78 (Bankr. E.D.N.Y. 2011).

[4] In re Tornheim, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995).

7

adequate funds will be recovered and if an appeal will be taken, the Debtors are not proposing to market and sell the U.S. Building stock until after the Malpractice Action has been resolved. Moreover, the terms of the proposed sale of the U.S. Building Stock are problematic, most notably because the terms do not provide for non-compete agreements from Spiderman Mulholland or any other employee.[5]

In addition to concerns over feasibility, the Plan does not meet the requirements of 11 U.S.C. § 1129(b) which provides that if all the requirements of § 1129(a) other than (a)(8) are met, the Court shall confirm the plan "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1) (2018); Sugarleaf Timber, 529 B.R. 317, 326 (M.D. Fla. 2015). "A Chapter 11 plan confirmed over the objection of a 'class of [impaired] secured claims' must meet one of three requirements in order to be deemed 'fair and equitable' with respect to the nonconsenting creditor's claim." RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 643 (2012). Those three requirements are enumerated in § 1129(b)(2)(A)(i) through (iii).

As applied to a class of secured claims (i.e., Trahan's claim) under § 1129(b)(2)(A), the three non-exclusive alternatives for meeting the "fair and equitable" requirement are: (i) the creditor keeps all liens and receives payments equal to the *present* value of the creditor's interest in estate property; (ii) if there is a sale of the collateral, the creditor retains liens on the proceeds from the sale and receives payment equal to the creditor's interest in such proceeds; or (iii) the creditor receives the "indubitable equivalent" of its claims. 11 U.S.C. § 1129(b)(2)(A) (2019); 6

---

[5] As the Court already recognized in its decision denying the Previous Plan, "[t]here are no noncompete agreements between US Building and any employee, including Debtors. Nothing prevents Debtors or any other key personnel from leaving US Building after turnover [of US Building's stock] and taking US Building clients." (Doc. 436, p. 3).

Norton Bankr. L. & Prac. 3d § 113:13 (July 2021); In re Seawalk Invs., LLC, No. 3:19-BK-1010-JAF, 2021 WL 5016600, at *11 (Bankr. M.D. Fla. Oct. 28, 2021). As to § 1129(b)(2)(A)(i), Trahan argues that the Plan does not protect the present value of her interest in US Building and fails to account for the time value of the risk and delay of repayment.[6] It is Trahan's position that the indefinite delay associated with the marketing and sale of U.S. Building, which hinges upon when the Malpractice Action will be resolved, unduly shifts the risk of failure to her. See In re TCI 2 Holdings, LLC, 428 B.R. 117, 162–63 (Bankr. D.N.J. 2010) (holding "the treatment of the secured creditor must be fair and equitable, meaning that the terms under which the deferred cash payments are made must not unduly shift the risk of failure to the secured creditor"). Next, Trahan argues that the Plan fails to comply with § 1129(b)(2)(A)(ii) because it restricts her right "to credit bid in any amount less than the full amount of her remaining allowed claim."[7] The effect of the proposed restriction would be to exclude Trahan from the sale unless she accepts the shares in full satisfaction of her claim. The Court agrees with Trahan's position on both these arguments. As the Plan does not meet the requirements of § 1129(b)(2)(A)(i) and (ii), the remaining issue is whether the Plan provides her the "indubitable equivalent" of her claim under § 1129(b)(2)(A)(iii).

---

[6] See Rake v. Wade, 508 U.S. 464, 472 n. 8 (1993) ("When a claim is paid off pursuant to a stream of future payments, a creditor receives the 'present value' of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments."); In re Airadigm Communications, Inc., 547 F.3d 763, 769 (7th Cir. 2008) ("Section 1129(b)(2)(A)(i)(II) thus requires interest if the claim is to be paid over time.").

[7] "A debtor may not sell its property free and clear of a creditor's lien under Section 1129(b)(2)(A)(ii) without allowing the creditor to credit-bid under Section 363(k)." In re Westport Holdings Tampa, LP, 604 B.R. 82, 90 (M.D. Fla. 2019). "Pursuant to section 363(k), a secured creditor may credit bid up to the total amount of its allowed claim at a sale under 363(b) unless the court for cause orders otherwise." In re River Rd. Hotel Partners, LLC, 2010 WL 6634603, at *1 (Bankr. N.D. Ill. Oct. 5, 2010) (internal citations omitted), aff'd sub nom. River Rd. Hotel Partners, LLC v. Amalgamated Bank, 651 F.3d 642 (7th Cir. 2011), aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639 (2012).

This inquiry "is a fact intensive inquiry" that "necessarily requires the Bankruptcy Court to resolve conflicting evidence and make credibility determinations in order to value the asset." Sugarleaf Timber, 529 B.R. at 327. Ultimately, "to qualify as the 'indubitable equivalent' of its claim, 'the treatment must be completely compensatory'" and there must be "no reasonable doubt [ ] the creditor will be paid in full." Id. at 328.

The terms of the Debtors' Plan leave the Court with substantial doubt as to whether Trahan will be paid in full. As already stated, the Debtors propose an *indefinite* timeline to market and sell U.S. Building that revolves entirely around the resolution of the Malpractice Action. The Debtors do not have a potential buyer, and the delayed sale terms raise reasonable concerns as to what the value of U.S. Building may be in the future. Moreover, the Debtors have ignored the Court's concerns raised over the lack of non-compete agreements. As the Court previously stated:

> Even if a potential buyer manifested after turnover, it is extremely doubtful that Trahan would receive $4.8 million due to the lack of any noncompete agreements from Spiderman or any other employee. Spiderman is the face of the business and effectively controls US Building's book of clients. The subject-matter knowledge of Spiderman Mulholland, as well as the good will and book of clients controlled by him, are the core assets of the business. Without these, US Building's revenue would likely drop to near zero. (Doc. 436).

These same concerns are also relevant to a feasibility analysis under § 1129(a)(11) as to whether the Fifth Amended Plan offers a reasonable assurance of success. See In re D & G Invs. of W. Florida, Inc., 342 B.R. 882, 885 (Bankr. M.D. Fla. 2006) (recognizing that the proponent of a plan must show the plan offers "a reasonable prospect of success and ... is workable").

The Debtors have had more than sufficient time to propose a confirmable plan and have failed to do so. The Debtors cannot continue to "park" their case in the bankruptcy court as a means of shielding them from the Judgment Debt.[8] The Debtors were given ample opportunities

---

[8] The Court finds the Debtors' tactics especially problematic as they initially filed this Case to circumvent the requirement for posting an appeal bond.

10

and time to propose a confirmable plan.  Unfortunately, the potential in those opportunities was not realized.[9]  The Court therefore finds there is cause to dismiss the case.

## Conclusion

Although the Debtors' petition was filed for the purpose of pausing Trahan's collection efforts, the Court initially held that the Debtors were "allowed to use the bankruptcy process to financially reestablish themselves." (Doc. 434, p. 9).  And over the past three years, the Court has been very patient and understanding of the complexities the Case presents.  However, the Debtors' intent to use this Case as a means of pausing Trahan's collection efforts, without proposing a confirmable plan, while they pursue the Malpractice Action is not appropriate.  For the reasons set forth in this opinion, the Court finds that the Debtors have failed to propose a confirmable plan and that "cause" exists to dismiss the case.  The Court will enter a separate order consistent with this opinion.[10]

Service of this Order other than by CM/ECF is not required.

---

[9] Following the trial, the parties attempted mediation but were not able to reach a resolution.  The Court finds this very unfortunate, because the parties reaching a consensus would have been the best outcome for all involved.

[10] In addition to denying confirmation of the competing plans of reorganization filed by the Debtors and Trahan as moot (Docs. 519, 525), the Court will also deny the Applications for Compensation (Docs. 529, 552) as moot.